JOSEPH JOSEPH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WELLS FARGO BANK & UNION TRUST CO., AND IRVING GOLLOBER, EXECUTORS, ESTATE OF JULIUS GOLLOBER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IRVING GOLLOBER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3091–3093. Promulgated March 24, 1927.

A corporation of which the petitioners were stockholders was legally dissolved in 1919 and the assets were received by the directors (who constituted the stockholders) as trustees in liquidation; in 1920 they sold the assets to a partnership (composed of the three principal stockholders) at their book value, receiving in payment therefor four promissory notes. *Held,* that the petitioners derived income measured by the difference between the cost of their shares and the book value at date of dissolution of the corporation.

*Camden R. McAtee, Esq.,* for the petitioners.
*Brice Toole, Esq.,* for the respondent.

These are proceedings for the redetermination of deficiencies in income tax of the respective petitioners for the year 1920 in the respective amounts of $720.39, $7,819.88, and $542.14. The proceedings were consolidated for the purpose of hearing and decision. The only point in issue is whether petitioners derived income in the year 1920 from the dissolution of the Irving Gollober-Joseph Corporation. The original petition in the case of Julius Gollober was filed on April 4, 1925. Julius Gollober died April 27, 1925, and his appeal was revived in the name of his executors by proper pleadings.

FINDINGS OF FACT.

Joseph Joseph, Julius Gollober, and Irving Gollober were stockholders in the Irving Gollober-Joseph Corporation, incorporated under the laws of California. The stock of the corporation was owned as follows:

| | Shares. |
| --- | --- |
| Julius Gollober | 2,448 |
| Joseph Joseph | 1,400 |
| G. Rosencrantz | 1 |
| Irving Gollober | 1,150 |
| Ida Gollober | 1 |
| Total | 5,000 |

At a stockholders' meeting November 25, 1919, it was voted to dissolve the corporation, and the board of directors, consisting of

the five stockholders, was instructed to employ counsel to file proceedings in the Superior Court in the State of California in and for the City and County of San Francisco to dissolve the corporation, to obtain a decree of dissolution of the corporation and to file the same with the Secretary of State in accordance with the law. The directors immediately took such steps and under date of December 30, 1919, a decree was entered by the court which sets forth the fact that a petition for the dissolution of a corporation was duly filed with it, signed and verified as prescribed by law, and being in all respects in conformity with Part III of Title VI of the Code of Civil Procedure of the State of California; that an order was entered directing that publication be made of petition in accordance with the law; that such publication was had, and then states:

That all claims and demands against said corporation applicant having been fully satisfied and discharged—

Now THEREFORE, it is hereby ordered, adjudged, declared and decreed, and this does order, adjudge, declare and decree that the said corporation applicant, the said Irving Gollober-Joseph Company, be and the same is hereby dissolved and declared dissolved.

It is hereby further ordered, adjudged, declared and decreed, and this does hereby further order, adjudge, declare and decree that the Board of Directors of said applicant are entitled to and are hereby authorized and empowered to settle all of the affairs of the said corporation, and to distribute and convey all of the property and assets of said corporation to its stockholders in proportion to their respective interests.

Done in open court this 30th day of December, 1919.

A copy of the decree was filed in the office of the Secretary of State of the State of California on December 31, 1919.

On January 2, 1920, a meeting of the board of directors of the dissolved corporation was held, at which the president announced the receipt of a communication from Joseph Joseph, Julius Gollober, and Irving Gollober, copartners, under the name of Irving Gollober-Joseph Co., offering to purchase all of the assets of the corporation and agreeing, first, to assume all the liabilities of the corporation, and, second, to pay to the corporation in installments the value of the assets of the corporation to be determined by a trial balance or audit, less the amount of liabilities assumed by the copartnership, and to deliver to the corporation promissory notes for such sums and payable at such times as might be agreed upon. The offer was accepted by the directors. The balance sheet of the business on January 2, 1920, showed a surplus of $79,688.05. For the net assets purchased by and transferred to the partnership the partnership executed and gave to the dissolved corporation's trustees in liquidation four notes, aggregating $79,688.05, all dated January 2, 1920, payable to the stockholders as "Trustees in liquidation" in the amounts and on the dates following:

| Dates payable: | Amount. |
|---|---|
| In 3 months | $9,896.02 |
| In 6 months | 9,896.01 |
| In 9 months | 9,896.02 |
| December 31, 1920 | 50,000.00 |
| Total of the 4 notes | 79,688.05 |

During the year 1920 the partnership paid the first three of the above mentioned notes, aggregating $29,688.05, to the trustees, and the trustees in turn distributed in that year said amount to the stockholders. The fourth note for $50,000 with accumulated interest of $2,500 was liquidated on December 31, 1921, by crediting to the capital account of Joseph Joseph, Irving Gollober, and Julius Gollober $17,499.99, $17,499.99 and $17,500.02, respectively. The trusteeship of the trustees in liquidation was relinquished on the same date.

In their income-tax returns for 1920 the petitioners did not return as income any part of the moneys received from the partnership. The respondent has amended their returns by adding to the gross income reported by Joseph Joseph $8,312.65, to that reported by Julius Gollober $14,547.15, and to that reported by Irving Gollober $6,828.25.

OPINION.

SMITH: The respondent determined the deficiencies in income tax of the petitioners for the year 1920 upon the ground that the Irving Gollober-Joseph Corporation, of which the petitioners were the principal stockholders, was dissolved on January 2, 1920; that the assets of the corporation then passed directly to the stockholders as tenants in common of the property, and that the petitioners received taxable income in 1920 to the extent that the book value of their shares at the date of dissolution exceeded the par value of their shares. *Appeals of E. C. Huffman* 1 B. T. A. 52; *John K. Greenwood*, 1 B. T. A. 291; *Buchmiller Estate*, 1 B. T. A. 380. The petitioners originally contended that they realized no income in 1920 from the dissolution of the corporation for the reason that the assets of the corporation passed to the directors as trustees in liquidation and that the amounts of cash received by them from the sale of the corporate assets and distributed to the petitioners in 1920 were less than the par value of their shares of stock in the dissolved corporation, and that they could not be charged with income tax with respect to liquidating dividends until they had recovered in cash the par value of their shares. After the evidence showed that the corporation was dissolved in 1919, and not in 1920, the petitioners contended and now contend that any gain realized from the dissolu-

tion was income of the year 1919 and of no subsequent year. No contention is made by either the petitioners or the respondent that the par value of the shares of stock in the dissolved corporation held by the petitioners is the proper basis for computing any gain which may have been realized from the dissolution.

It has been ruled in numerous decisions by California courts that trustees simply have a power in trust and do not have the legal title to the assets, which title is vested in the stockholders immediately upon dissolution of the corporation. These conclusions of law have been reached in cases arising from the forfeiture of the corporate charter and resulting dissolution because of failure to comply with the corporate laws of the State with regard to paying license taxes and for other similar reasons.

Section 400 of the Civil Code of California, as amended by Stats. 1917, p. 380, provides:

Unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full powers to settle the affairs of the corporation, collect and pay outstanding debts, sell the assets thereof in such manner as the court shall direct, and distribute the proceeds of such sales and all other assets to the stockholders. Such trustees shall have authority to sue for and recover the debts and property of the corporation, and shall be jointly and severally personally liable to its creditors and stockholders or members, to the extent of its property and effects that shall come into their hands.

In *Rossi* v. *Caire*, 174 Cal. 74; 161 Pac. 1161, the court said:

The directors of a corporation, before its dissolution, do not, by virtue of their office, hold or possess any title to or interest in the property of the corporation. The title is wholly vested in the corporation. The above statute providing that, upon forfeiture of the charter, the directors shall become trustees for the corporation and its stockholders to settle its affairs, does not purport to invest the trustees with any title to the property formerly belonging to the corporation. They get by the forfeiture nothing more than the statute gives them, and that is merely a power over the property, not the title. The corporation having ceased to exist, it is no longer capable of holding the title or the possession, the property belongs to the persons who were its stockholders at the time it ceased to be a corporation (*Havemeyer* v. *Superior Court*, 84 Cal. 362, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192), and the right of possession passes to the directors by force of the statute making them trustees to settle the corporate affairs, since such right must be necessary for that purpose.

In *Crystal Pier Co.* v. *Schneider*, 40 Cal. App. 379; 180 Pac. 948, after reference to the foregoing *Rossi* case, the court further said:

* * * After forfeiture of the charter the situation, then, is this: The title to all property that formerly belonged to the dead corporation is vested in those who were its stockholders at the time of its demise; the trustees to settle the affairs of the corporation have in their possession property belonging to those who were stockholders at the date of the dissolution; they are

bound to settle the affairs of the former owner, the defunct corporation; they have all the power to deal with and dispose of the property that is necessary to accomplish this object.

The "trustees," as the directors in office at the date of the forfeiture are designated by the statute, are the donees of a power in trust. Though the statute refers to the directors in office as "trustees," they are not trustees of a "trust," in any true sense of the term. In every true trust the legal title is vested in the trustee. Powers in trust differ from trusts in this, that in the case of such powers the legal title is vested, not in the trustee, but in a third person, but the donee of the power in trust can convey the title and dispose of the property to or for the beneficiaries.

In *Jones* v. *Peck*, 63 Cal. App. 397; 218 Pac. 1030, the court expressed the foregoing rules in one sentence as follows:

All of the property of a defunct corporation belongs to the persons who were its stockholders at the time it ceased to be a corporation, but the right of possession passes to the directors in office by force of the statutory provision which makes them trustees to settle the corporate affairs.

Although it would appear from the above decisions of the California courts that the legal title to the assets of a corporation vests in the stockholders at the date of the dissolution of the corporation, this fact is not necessarily determinative of the question when income is realized by the stockholders of a corporation in a case such as the one at bar. The trustees in liquidation have a power in trust over all of the assets of a dissolved corporation. They have the absolute right of possession. All of the assets of the corporation may be used by the trustees in liquidation in paying the debts of the corporation so that the stockholders will never receive any portion of them. If, in the instant case, a large part of the assets of the corporation at the date of dissolution had been taken by the trustees in liquidation for the payment of the debts of the corporation, the stockholders clearly would never have derived any income therefrom either in 1919, 1920, or in any subsequent year. Although the decree of dissolution entered by the court on December 30, 1919, stated that it satisfactorily appeared to the court from the petition for dissolution of the corporation, and the court found as a fact, that all claims and demands against the corporation applicant had been fully satisfied and discharged, the evidence of record shows that the corporation had large outstanding liabilities on December 30, 1919. The balance sheet as of January 2, 1920, the date when the assets were sold to the partnership, shows accounts payable of $30,475.95 and accrued Federal income and profits taxes for 1919 of $8,330.37. The stockholders as such did not receive the assets of the corporation for their own possession and enjoyment on December 30 or December 31, 1919. These assets were under the control of the five directors as trustees in liquidation until some time in January, 1920,

when they sold them to the three principal stockholders as partners in consideration of the partners assuming all the liabilities of the corporation and the execution and delivery of four interest-bearing promissory notes to the trustees in liquidation, the face value of which amounted to the book value of the assets in excess of the liabilities other than capital stock. The trustees in liquidation were in this case all of the stockholders of the dissolved corporation.

We have no evidence that the cash value of the notes received by the stockholders of the corporation, as trustees in liquidation, were not equal to their face value. We therefore have a situation where the trustees in liquidation, who were also the stockholders and as such owned all of the stock of the corporation, received the notes of the three principal stockholders for the value of the assets in excess of liabilities and were in a position to distribute to themselves in 1920 property of a value equal to $79,688.05. In fact it was not necessary to make a distribution. The notes were made payable to the stockholders and they had both title and possession thereof. The mere fact that the trustees in liquidation did not immediately make some formal declaration or record that they were relinquishing their trusteeship appears to the Board to be immaterial. Such an act was useless because they were the only persons interested.

We think that from the standpoint of substance the petitioners derived their income from the dissolution of the corporation in the year 1920 when they received the notes of the three stockholders in an amount equal to the excess of the value of the assets over the liabilities of the corporation and assumed the corporation's liabilities. Under the circumstances of this case, when this took place the former stockholders of the corporation owned and had in their possession, in lieu of the assets of the corporation, notes in the amount of $79,688.05 and their functions as trustees in liquidation were at an end, there being nothing further for them to do in that capacity.

*Judgment will be entered for the respondent.*

PHILLIPS concurs in the result only.