HOUGHTON & DUTTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24883.  Promulgated October 31, 1932.

*J. Robert Sherrod, Esq.,* for the petitioner.
*F. R. Shearer, Esq.,* for the respondent.

### OPINION.

ARUNDELL: This proceeding involves income and profits taxes for the years 1919 and 1920. At the hearing on the merits the issues relating to 1919 were disposed of by the parties by waiver and

stipulation, but the matter of recomputation for that year was left open. We decided the issues concerning 1920 in our report promulgated at 26 B. T. A. 52. Upon recomputation it developed that there was a slight difference between the parties concerning minor adjustments to inadmissible assets for invested capital purposes, but as to these counsel for petitioner recedes, and the respondent's figures in this respect will be approved on the further computation that will need be made.

A substantial controversy exists as to the manner of giving effect to the items which we held constituted allowable deductions for the year 1920. There were three of these items: (1) Loss on stock of petitioner's wholly owned subsidiary; (2) bad debts consisting of indebtedness of the subsidiary to petitioner; (3) accrued expense which arose out of petitioner's obligation to redeem trading stamps issued by its subsidiary. These deductions we held were allowable by reason of the facts that at the end of the year 1920 the subsidiary was out of business and was hopelessly insolvent, and that, under the decision in *Aluminum Goods Manufacturing Co.* v. *Commissioner*, 56 Fed. (2d) 568, the affiliation was broken as effectively as though there had been a sale of the subsidiary's stock.

On recomputation under Rule 50, the petitioner claims the several deductions in their full amounts from its income for the entire year. Respondent takes the position that the deductions are allowable from petitioner's income only for the period within the year that is outside the period of affiliation, and that as the only period of this kind was the brief interval between the close of business on the last day of the year and the end of the year, during which petitioner had no income, there is nothing from which the several deductions may be taken.

We think that respondent's position in this respect is erroneous. Deeply rooted in the Federal tax system is the fundamental idea of computation of taxes on an annual basis. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301. Even though affiliated with others, each corporation is still a taxpayer (*Woolford Realty Co.* v. *Rose*, 286 U. S. 319), and as such is entitled to have its taxes computed on the basis of its taxable year, which requires that it report all income received within the year as yearly, and not daily, income, and carries with it the correlative right to all the statutory deductions growing out of transactions within the year without regard to the particular day on which they occurred.

It is argued by respondent that his position here is in accordance with article 634 of Regulations 45, as amended by T. D. 4022 (C. B. VI-1, p. 258) which provides that, where two corporations are affiliated at the beginning of the year, but, due to a change in stock

ownership or control during the year, affiliation is terminated, a consolidated return shall be filed for the period of affiliation, and a separate return should be filed for each for the remainder of the year. The respondent's theory, if carried into practice, would require the filing of a separate return in cases like this for the fractional part of a day between the close of business on the last day and the end of the year.

The same provisions appear in subsequent regulations (art. 634, Reg. 62 and 65), but these later regulations provide further that, "in any case in which the consolidated status is for a period so short as to be negligible, a consolidated return or separate returns for the entire period, as the case may be, may be filed." The respondent's position as asserted here is contrary to the quoted provision, which has now been long established.

We are unable to perceive the necessity of a separate return by the parent company for the period within the year following the termination of affiliation. The decisions are uniform in holding that where a corporate taxpayer affiliates during the year with a newly organized corporation which has had no separate existence, a single return containing the income of both during affiliation and the separate income of the one prior to affiliation is all that need be filed. *Automatic Fire Alarm Co.*, 13 B. T. A. 1195; *Hutt Contracting Co.*, 17 B. T. A. 818; *Margay Oil Corporation*, 26 B. T. A. 199; *American Paper Exports, Inc.* v. *Bowers*, 54 Fed. (2d) 508. The decision in the last cited case is based on the premise that, under the circumstances there present, the filing of two returns for the one year would be "contrary to the general theory of an income tax, which does not allow the splitting of years." The law being thus established by the decided cases, is there any sound reason why the same rule should not apply where, during the year, affiliation is broken by reason of the factual death of the subsidiary corporation? In such a case there was no period within the year during which the subsidiary had a separate existence; hence, there was no period for which it would be required to file a separate return. And the reasons which support the propriety of a single consolidated return by the parent where a newly organized corporation comes into the group, as in the cases cited, are sufficient to permit the filing of a similar return where a subsidiary leaves the group and has no further existence. It is true under both situations that there is a period in which the parent may be said to have a "separate" existence in one sense of the word. But under what we conceive to be the proper view, the absence of another corporation from which the parent's income must be separated for any part of the year is an important and distinguishing

feature. In the situations we are discussing here there is, properly speaking, no period of "separate" existence for either corporation. During all of the time that both were in being they were affiliated. Under such circumstances we are of the opinion that a consolidated return for the entire year is the only return required and that it should include all the parent's income and deductions for the year.

There is no conflict between our holding on this question and the decisions in *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77, and *Riggs National Bank*, 17 B. T. A. 615; affd. 57 Fed. (2d) 980. In those two cases the essential question was to determine the parent companies' net incomes for the year as affected by disposition of stock of subsidiaries, in the one case through sale, and the other through liquidation. It was held that the gain or loss occurred outside the period of affiliation, thus distinguishing the cases from those where there was a question of gain or loss from dealing in stock of an affiliate during the period of affiliation. In both the cited cases the gain or loss was reflected in the income of the parent company on the basis of its operations for the entire year. One case appears to be contrary to our holding here. In *Canal-Commercial National Bank*, 22 B. T. A. 541, a liquidating dividend paid by a subsidiary on December 30, 1920, was held to be income of the parent, and not of the group, and not includable in consolidated income of the two companies. In the recomputation filed pursuant to the opinion rendered and in the decision thereafter entered, the gain realized on liquidation was treated as income of one day—December 31, 1920. In view of what we have said above, we now think that treatment was erroneous and it will not be followed in the future.

The proposed recomputations of the parties raise the question of the extent to which the allowable deductions for 1920 should be reduced by the operating losses of the subsidiary company. The respondent reduces the deductions by the operating losses of the subsidiary which were allowed on consolidated returns for the years 1918, 1919 and 1920. Petitioner, on the other hand, contends that the deductions should be allowed in full and that operating losses should not be taken into consideration. In *Riggs National Bank*, *supra*, it was held that the loss sustained on liquidation should be reduced by the operating loss sustained during the period of affiliation within the year which had been reflected in consolidated income for that period. The result of this was to give effect to the entire year's operation. The loss sustained during the period of affiliation was reflected in a shrinkage of assets, so that the allowance of the operating loss in one period within the year and the capital loss in

the next period of the same year gave effect to the entire loss sustained. We think the rule announced in the *Riggs National Bank* case in this respect is sound and should be followed here.

No adequate reason is given by respondent in support of his claim that the operating losses of prior years should be carried forward to the current year. The prior years, as far as we are concerned here, are closed and we are not disposed to bring forward the results of their operations, at least without a better showing of the propriety of such action than is made in this case. Cf. *United Publisher's Corporation* v. *Anderson*, 42 Fed. (2d) 781.

The parties are requested to file further computations within thirty days of the promulgation of this opinion, and in the event of any differences between them a further hearing will be granted.

Reviewed by the Board.

TRAMMELL dissents.